UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------------x

EDWARD BOWDEN, WILBER BUTLER, SILVESTRE
CAMPO, AUBREY CARTER, SEAN DAVIS, ROBERT
GREGORY, ANTHONY GRIGOROFF, SHARDELL HALL,
BRIAN JOHNSON, DANIEL JONES, TRAVIS MATTHEWS,
DAVID MCFADDEN ANTHONY McNAUGHTY, KEITH,
PHOENIX, ANTONIO PEGUES, VINCENT POLIANDRO,
ALAN RAMIREZ, TERRELL RICE, JONATHAN SANCHEZ,
RONAL SANDOVAL-CAMPOS, MARADONA SMITH,
STACY STRIKLIN, MICHAEL THOMPSON, ANDRE
VELEZ, and MARVIN WINKFIELD,

**COMPLAINT**

Docket No. 25-cv-9301

*JURY TRIAL DEMANDED*

                                                    Plaintiffs,

              -against-

CORRECTIONAL OFFICERS RYAN CASWELL, MICHEAL
RYAN, ALEX AGOSTINO, JARED MONGOMERY,
WILLIAM GONZALEZ-SANTOS, KEMAR EUTER, JUSTIN
CHRISTIAN, JAIME USZENSKI, AMEED AL-RABADI,
MARTIN RIVERA, ANTHONY NAVARRO, DANIEL
URCIUOLI, DAVID VANCE, A. ARROYO (JOHN DOE #1),
ANTHONY COPPOLA, CARMEN MATRESE, W.
SHELLING (JOHN DOE #2), ROBERT J. DAVIES, III,
MORGAN JAMES DIMONDA, CHARLES DEVANEY,
GERARD MATTHIES, ANDRES MORRIS, T. O'HEA
(JOHN DOE #3), MIGUEL NIN, STEPHEN LACIKA, JR.,
MARIO RAMIREZ, NAQUAN MURRAY, BRENDAN
WALSH, JEREMY RUFFINO, ANGELA PRIMO ANDREW
ARVIDSON, RONDY LONDON, RICHARD BRITTON,
KENNETH LAMB, CHAD LECLAIR, RYAN DECKER,
R. JONES (JOHN DOE #4), ROXAN WILSON, ERIC WILSON,
SEAN CROWE, MARTIN RIVERA, MICHAEL CASTELLANI,
JEREMY OSTERHOUDT, TAYLOR (JOHN DOE #5),
COREY COMPTON, ALFRED OSTRANDER, MICHAEL
QUACKENBUSH, CHRISTON COLEMAN, MICHAEL
CALLERI, JAMES SMITH, AROLFO DELACRUZ,
JOSHUA REYNOLDS, DANIEL DAGELE, JOHN DOE
#6, JOHN DOE #7, JOHN DOE #8, ANDREW HERMAN,
KYLE CHARSLEY, MICHAEL SARRUBBO, DANIEL
HALSTROM, MICHAEL KASPER, LANCE TABOR,
GREGORY SCOTT, JAMES EMSWORTH, MICHAEL
IMBASCIANI, DANIEL PICCIRILLO, SCOTT THOMPSON,
JOHN DOE #9, JOHN DOE #10, JOHN DOE #11, JOHN
DOE #12, KEVIN PIFKO, JUSTIN BROWN, TC CHRISTY,

1

TAYLOR KANEGRABER, ROBERT REDNER, AND
CHRISTOPHER BRUDER,

                                    Defendants.
-------------------------------------------------------------------------------------x

       Plaintiffs, by and through their attorneys, Barket Epstein Kearon Aldea & LoTurco, as and

for their Complaint against the above-named Defendants, state and allege as follows:

## PRELIMINARY STATEMENT

    1.  This is a civil rights action in which the Plaintiffs seek relief for the violation of their

rights secured and guaranteed to them by the Civil Rights Act of 1871, 42 U.S.C. §1983, by the

Eighth Amendment to the United States Constitution, and by the laws and Constitution of the State

of New York. For their injuries, Plaintiffs seek damages, both compensatory and punitive, an

award of costs and attorney's fees, and any such other and further relief as this Court may find to

be just and appropriate.

## JURISDICTION AND VENUE

    2.  Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1343 and 42 U.S.C. §1983.

    3.  Venue is proper in this Court pursuant to 28 U.S.C. §1391 (a), (b) and (c), as the events

giving rise to this complaint happened in this judicial district.

## PARTIES

    4.  Plaintiffs were at all relevant times prisoners at Sing Sing Correctional Facility,

committed to the custody of the New York State Department of Corrections and Community

Supervision (" the NYS DOCCS").

    5.  Plaintiff Edward Bowden's Department Identification Number ("DIN") was 17A0749.

He is no longer in the custody of the NYS DOCCS.

6.  Plaintiff Wilber Butler's DIN is 19A2461. He is presently housed at Cayuga Correctional Facility.

7.  Plaintiff Silvestre Campo's DIN is 18A4793. He is presently housed at Sing Sing Correctional Facility.

8.  Plaintiff Plaintiff Aubrey Carter's DIN is 18A4711. He is presently housed at Upstate Correctional Facility.

9.  Plaintiff Sean Davis's DIN is 12A1486. He is presently housed at Cape Vincent Correctional Facility.

10. Plaintiff Robert Gregory's DIN is 15A0902. He is presently housed at Fishkill Correctional Facility.

11. Plaintiff Anthony Grigoroff's DIN is 17A4091. He is presently housed at Sing Sing Correctional Facility.

12. Plaintiff Shardell Hall's DIN is 17A2015. He is presently housed at Orleans Correctional Facility.

13. Plaintiff Brian Johnson's DIN was 13B0703.  He is no longer in the custody of the NYS DOCCS.

14. Plaintiff Daniel Jones's DIN is 18A1403.  He is presently housed at Greene Correctional Facility.

15. Plaintiff Travis Matthews's DIN was 12A3426.  He is no longer in the custody of the NYS DOCCS. He resides in Kings County.

16. Plaintiff David McFadden's DIN was 17A0749.  He is no longer in the custody of the NYS DOCCS. He resides in New York County.

17. Plaintiff Anthony McNaughty's DIN is 22R0902. He is presently housed at Green Haven Correctional Facility.

18. Plaintiff Anthony Pegues's DIN is 07A1014. He is presently housed at Clinton Correctional Facility.

19. Plaintiff Keith Phoenix's DIN is 10A4038. He is presently housed at Sing Sing Correctional Facility.

20. Plaintiff Vincent Poliandro's DIN is 13A0391. He is presently housed at Mohawk Correctional Facility.

21. Plaintiff Alan Ramirez's DIN is 94A5171. He is presently housed at Sing Sing Correctional Facility.

22. Plaintiff Terrell Rice's DIN was 09A3334. He is no longer in the custody of the NYS DOCCS

23. Plaintiff Jonathan Sanchez's DIN is 22B1847. He is presently housed at Elmira Correctional Facility.

24. Plaintiff Ronal Sandoval-Campos's DIN is 18A3716. He is presently housed at Clinton Correctional Facility.

25. Plaintiff Maradona Smith's DIN is 16A4893. He is presently housed at Elmira Correctional Facility.

26. Plaintiff Stacy Stricklin's DIN is 13A2462. He is presently housed at Eastern Correctional Facility.

27. Plaintiff Michael Thompson's DIN is 12A2004. He is presently housed at Sing Sing Correctional Facility.

28. Plaintiff Andre Velez's DIN is 11A4961. He is presently housed at Sing Sin Correctional Facility.

29. Plaintiff Marvin Winkfield's DIN is 07A5488. He is presently housed at Clinton Correctional Facility.

30. Defendant Ryan Caswell was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

31. Defendant Michael Ryan was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

32. Defendant Alex Agostino was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

33. Defendant Jared Montgomery was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

34. Defendant William Gonzalez-Santos was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

35. Defendant Kemar Euter was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

36. Defendant Justin Christian was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

37. Defendant Jaime Uszenski was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

38. Defendant Ameed Al-Rabadi was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

39. Defendant Martin Rivera was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

40. Defendant Anthony Navarro was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

41. Defendant Daniel Urciuoli was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

42. Defendant David Vance was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

43. Defendant A. Arroyo (John Doe #1) was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

44. Defendant Anthony Coppola was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

45. Defendant Carmen Matrese was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

46. Defendant W. Shelling (John Doe #2) was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

47. Defendant Alex Agostino was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

48. Defendant Robert J. Davies, III was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

49. Defendant Morgan James Dimonda was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

50. Defendant Charles Devaney was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

51. Defendant Gerard Matthies was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law

52. Defendant Andres Morris was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

53. Defendant T. O'Hea (John Doe #3) was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

54. Defendant Miguel Nin was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

55. Defendant Stephen Lacika, Jr. was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

56. Defendant Mario Ramirez was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

57. Defendant Naquan Murray was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

58. Defendant Brendan Walsh was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

59. Defendant Jeremy Rufino was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

60. Defendant Angela Primo was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

61. Defendant Andrew Arvidson was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

62. Defendant Rondy London was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

63. Defendant Richard Britton was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

64. Defendant Kenneth Lamb was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

65. Defendant Chade Leclair was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

66. Defendant Ryan Decker was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

67. Defendant R. Jones (John Doe #4) was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

68. Defendant Roxan Wilson was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

69. Defendant Eric Wilson was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

70. Defendant Sean Crowe was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

71. Defendant Michael Castellani was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

72. Defendant Jeremy Osterhoudt was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

73. Defendant Taylor (John Doe #5) was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

74. Defendant Cory Compton was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

75. Defendant Alfred Ostrander was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

76. Defendant Michael Quackenbush was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

77. Defendant Christon Coleman was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

78. Defendant Michael Calleri was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

79. Defendants James Smith was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

80. Defendant Arolfo Delacruz, was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

81. Defendant Joshua Reynolds was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

82. Defendant Daniel Dagele was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

83. Defendant John Doe #6 was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

84. Defendant John Doe #7 was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

85. Defendant John Doe #8 was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

86. Defendant Andrew Herman was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

87. Defendant Kyle Charsley was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

88. Defendant Michael Sarrubbo was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

89. Defendant Daniel Halstrom was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

90. Defendant Michael Kasper was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

91. Defendant Lance Tabor was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

92. Defendant Gregory Scott was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

93. Defendant James Emsworth was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

94. Defendant Michael Imbasciani was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

95. Defendant Daniel Piccirillo was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

96. Defendant Scott Thompson was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

97. Defendant John Doe #9 was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

98. Defendant John #10 was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

99. Defendant John Doe #11 was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

100.     Defendant John Doe #12 was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

101.     Defendant Kevin Pifko was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

102.     Defendant Justin Brown was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

103.     Defendant Tc Christy was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

104.     Defendant Taylor Kanegraber was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

105.     Defendant Robert Redner was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

106.    Defendant Christopher Bruder was and is a correctional officer employed by the NYS DOCCS. At the time of the events giving rise to Plaintiff's claim, he was a correctional officer acting under color of state law.

## STATEMENT OF FACTS

107.    Between November 6, 2022 and November 13, 2022, New York State correctional officers, led by members of ten Correctional Emergency Response Teams (or "CERTs") – activated and deployed from Central Office and from Albany, Attica, Coxsackie, Eastern, Elmira, Fishkill, Wallkill, Midstate, and Woodbourne Correctional Facilities – carried out a days-long campaign of violence, harassment, and terror against defenseless incarcerated men inside their prison cells at Sing Sing Correctional Facility during a Lockdown and Overall Facility Search.[1] The violence inflicted against these men by tactically-clad correctional officers – which was witnessed by complicit supervisors and staff – followed a general pattern where teams of three or more correctional officers entered an incarcerated individual's cell, directed the individual to place his hands up against the back wall of the cell or interlace his hands behind his head, and ordered the individual to strip down to his underwear and slippers. Then, without provocation, and notwithstanding the individual's compliance, the correctional officers physically attacked the men. These beatings were widespread, organized, and brutal, and caused Plaintiff's to suffer both physical and psychological injuries.

108.    Pursuant to the NYS DOCCS regulations, a Lockdown and Overall Facility Search of this nature can only take place pursuant to a directive from a high-ranking official within New York State. *See* NYS DOCCS Directive 4910(VI)(C)(2).  The facility Superintendent must first

---

[1] "Lockdown" refers to the full facility lockdown that began inside the Prison on or about November 6, 2022 and lasted until on or about November 13, 2022. "Overall Facility Search" as defined by NYS DOCCS Directive 4910(IV)(C)(2), means the entire search of the Prison, which took place during the Lockdown.

consult with the Deputy Commissioner for Correctional Facilities. Then, after consultation, the Superintendent can electronically submit a request for an "Overall Facility Search" to the Deputy Commissioner for Correctional Facilities. The basis for such an extraordinary measure must be "clearly delineated by the Superintendent," after which the "Deputy Commissioner for Correctional Facilities will consider the request and provide a written response after consultation with the Commissioner." *Id*. Upon approval, the Superintendent must also notify the Deputy Commissioner and Chief of the Office of Special Investigations (OSI), and OSI is then required to observe the "search." All of which is to say, by the NYS DOCCS regulation, the facility-wide rampage in this case was not a series of isolated decisions made by correctional officers confronting varying circumstances throughout the prison. Rather, the Lockdown, Overall Facility Search, and activation and deployment of CERT to the prison was initiated by the coordinated and deliberate efforts of Sing Sing's Superintendent, Michael Capra, the Commissioner, Anthony Annuci, and the Deputy Commissioner of Correctional Facilities (Joseph Noeth) —the only individuals who could have authorized it – in consultation with then Executive Deputy Commissioner, Daniel Martuscello, and the Deputy Commissioner of Special Investigations, Darren Miller. And, more troubling still, is the fact that the beatings of these incarcerated men by CERT members and correction officers were carried out in the presence of OSI representatives— the very individuals designated by the State to observe the Overall Facility Search and investigate claims of abuse and misconduct by correctional officers.

109.    Twenty-Five of these incarcerated men have joined together as Plaintiffs, and commenced this action with the unified purpose of holding the Defendants accountable for their unjustified, malicious, and excessive uses of force.

110.    The harrowing experiences of each Plaintiff are as follows:

a.  **Edward Bowden.** On November 9, 2022, at approximately 2:00 pm, Mr. Bowden was locked in his cell following all laws, rules, and guidelines when he was assaulted by multiple correctional officers without provocation. After being directed to move to the back of his cell and put his hands on the wall, Mr. Bowden complied without any hesitation or resistance. Approximately seven officers or CERT members entered his cell. Two slammed him against the wall and the others threw his property around his cell. The officers yelled at Mr. Bowden to stop resisting, but he was not resisting. A number of officers—including Michael Ryan, Ryan Caswell, and Alex Agostino—began hitting Mr. Bowden with their fists, knees, batons, and feet. After throwing him onto his bed and handcuffing him, they transported Mr. Bowden to the medical unit intimidating him from reporting his injuries. As a result of the assault, Mr. Bowden suffered bruises on several areas of his body and has experienced back issues ever since.

b.  **Wilber Butler.** On November 10, 2022, at approximately 5:45 pm, Mr. Butler was locked in his cell (A-K-9), following all laws, rules, and guidelines, when he was assaulted by multiple correctional officers without provocation. After being directed to strip down to his boxers and slippers, interlock his hands on his head, and face the wall, Mr. Butler complied without any hesitation or resistance. Officers William Gonzalez-Santos, Kemar Euter, Justin Christian, Jaime Uszenski entered his cell and yelled at him to not move. The officers immediately restrained Mr. Butler, punched him, poked him with a baton, and placed him in a chokehold. They then handcuffed him behind his back and brought him outside his cell. In response to Mr. Butler's screams, a female officer placed her hand over his mouth, and a

CERT team member banged his head against the gates. The officers then bent him over and dragged him to the medical unit. As a result of this assault, Mr. Butler suffered bruised ribs, a swollen jaw, scrapes and scratches over his body, intense back pain, a pinching feeling in his lungs, and difficulty breathing. Due to his injuries and persistent pain, Mr. Butler was transported to Mount Vernon Hospital for treatment and evaluation.

c.  **Silvestre Campo.** On November 10, 2022, at approximately 7:00 am, Mr. Campo was locked in his cell (B-M-268), following all laws, rules, and guidelines, when he was assaulted by multiple correctional officers without provocation. After being directed to stand up, Mr. Campo complied without any hesitation or resistance. Multiple correctional officers, including Officers Ameed Al-Rabadi, Martin Rivera, Anthony Navarro, and Daniel Urciuoli entered his cell, and at least one of the officers immediately struck him on his face, body, and ribs using his fists and knees. The officers then brought Mr. Campo to the medical unit. CERT officers punched Mr. Campo about the head and body as he was walked down the gallery to the medical unit As a result of this assault, Mr. Campo suffered injuries to his jaw and ribs. Due to his injuries and persistent pain, Mr. Campo was transported to Mount Vernon Hospital for treatment and evaluation.

d.  **Aubrey Carter.** On November 9, 2022, at approximately 7:30 am, Mr. Carter was locked in his cell (A-L-67), following all laws, rules, and guidelines, when he was assaulted by multiple correctional officers without provocation. After being directed to strip down to his boxers and slippers, interlock his hands behind his head, and face the back of his cell, Mr. Carter complied without any hesitation or

resistance. Approximately four officers or CERT members—three males and one female, and including Officer David Vance and Kemar Euter, A. Arroyo (John Doe #1), and Anthony Coppola—entered his cell. One officer immediately grabbed him under his arms and threw him face down onto his bed. The officers then repeatedly punched Mr. Carter in the back of his head and yelled at him to stop resisting, even though he was not resisting. Two officers had their knees on his back, and one officer kicked him on the top of his head. With Mr. Carter's hands cuffed behind his back, the officers bent him over and pressed down on his neck as they walked him to the medical unit. While there, Mr. Carter was only given ibuprofen, and he has continued to request medical intervention to no avail. As a result of this assault, Mr. Carter experienced ongoing substantial pain to his head and lower back.

e. **Sean Davis.** On November 10, 2022, at approximately 6:50 pm, Mr. Davis was locked in his cell (B-W-23), following all laws, rules, and guidelines, when he was assaulted by multiple correctional officers without provocation. After being directed to strip down to his boxers, move to the back of his cell, and put his hands on the wall, Mr. Davis complied without any hesitation or resistance. Approximately three officers or CERT members, including Officers Carmen Matrese, W. Shelling (John Doe #2), Alex Agostino, Robert J. Davies, III, and Morgan James Dimonda entered his cell and immediately began striking him with fists, elbows, feet, and batons. The officers then placed him in handcuffs and took him to the medical unit. While there, the same officers continued to assault him. As a result of the assault, Mr. Davis suffered injuries to his neck and back, and

continues to experience pain in these areas. Due to his injuries and persistent pain, Mr. Davis was transported to Mount Vernon Hospital for treatment and evaluation.

f. **Robert Gregory.** On November 10, 2022, between approximately 9:00 am and 10:00 am, Mr. Gregory was locked in his cell (B-Y-27), following all laws, rules, and guidelines, when he was assaulted by multiple correctional officers without provocation. After being directed to stand up and place his hands on the wall, Mr. Gregory complied without any hesitation or resistance. Approximately three officers or CERT members—including Officers Jared Montgomery, T. O'hea (John Doe #3), Charles Devaney, Ryan Caswell, Gerard Matthies, and Andres Morris—entered his cell and began punching him and yelling at him to stop resisting, even though he was not resisting. Officer Montgomery bent and twisted Mr. Gregory's left wrist and thumb, threatening to break his hand unless he put his hands behind his back. The officers pinned him to his bed as they continued to punch him and bend parts of his body. After handcuffing him with so much force that the handcuffs cut into his hands, the officers continued to punch Mr. Gregory's ribs and the side of his head. The officers then brought Mr. Gregory outside his cell and two CERT members in camouflage uniforms escorted him to the medical unit, where Officer Montgomery and other officers joked about whether Mr. Gregory had exposed himself to a female officer and whether he was injured. As a result of the assault, Mr. Gregory suffered injuries to his left wrist and left thumb, restricting their movement and and use.

g. **Anthony Grigoroff.** On November 10, 2022, at approximately 5:30 pm, Mr. Grigoroff was locked in his cell (B-W-67), following all laws, rules, and guidelines,

when he was assaulted by multiple correctional officers without provocation. After being directed to strip down to his boxers and sandals, Mr. Grigoroff complied without any hesitation or resistance and faced the wall with his hands on his head. Approximately three officers or CERT members—including one male wearing tan army fatigues and Officer Miguel Nin—entered his cell. The officers immediately began to hit Mr. Grigoroff's head, face, and body and pinned him down. The officers also spit tobacco all over his cell. The officers did not take Mr. Grigoroff to the medical unit. As a result of the assault, Mr. Grigoroff suffered a bruised black eye and scrapes to his right knee and back.

h. **Shardell Hall.** On November 10, 2022, at approximately 7:00 am, Mr. Hall was locked in his cell (B-U-66) following all laws, rules, and guidelines when he was assaulted by multiple correctional officers without provocation. After being directed to strip down to his boxers, interlock his hands on his head, and face the wall, Mr. Hall complied without any hesitation or resistance. As he then obeyed an order to turn around and open his mouth, approximately four officers or CERT members, including Officers Stephen Lacika, Jr. Mario Ramirez, Miguel Nin, and Naquan Murray, entered his cell. One officer yelled at Mr. Hall to stop resisting, although he was not resisting, and another punched him in the stomach. The officers then threw him face down onto his bed. One officer put his knee on the back of Mr. Hall's neck while others restrained him by his arms and legs. Even after being informed that Mr. Hall could not breathe and placing him in handcuffs, the officers continued to punch his head, back, and all over his body. They then brought him outside his cell, while bent over and barefoot, and hit him if he attempted to raise

his head. In the gallery, an officer in plain clothes told Mr. Hall that he would receive a ticket unless he gave the officers certain information. The officers then took Mr. Hall to the medical unit. As a result of the assault, Mr. Hall suffered a knot in the back of his neck and pain and soreness throughout his body. He continues to experience back pain. *See* Exhibit H (Statement of Shardell Hall).

i.   **Brian Johnson.** On November 9, 2022, at approximately 8:00 am, Mr. Johnson was locked in his cell (A-P-42), following all laws, rules, and guidelines, when he was assaulted by multiple correctional officers without provocation. After being directed to strip down to his boxers and sandals and exit his cell with his mattress, he complied without any hesitation or resistance. After being scanned, he returned to his cell with approximately five officers or CERT members—including female Officer Angela Primo, Andrew Arvidson, Rondy London, and Richard Britton. Officer Primo told him to face the wall. The officers then punched and kicked Mr. Johnson, causing him to fall over. Officer Primo grabbed his genitals and covered his mouth. The officers then put his head against the rim of the toilet, with his dreadlocks inside the toilet. The officers yelled at him to stop resisting, even though he was not resisting. After one officer grabbed him by his hair, Mr. Johnson backed up and fell out of his cell. The officers handcuffed him behind his back and, with his arms raised and body bent over, brought him to the disciplinary area. On the way there, the CERT member wearing #22-38 punched him on the left side of his face. Officer #22-38 and another officer then shoved Mr. Johnson's face into the wall inside the disciplinary before bringing him to the medical unit.. As a result of this assault, Mr. Johnson suffered pain to his lower back, right Achilles tendon, left

jaw, and right thigh. Mr. Johnson was sent to Mount Vernon Hospital for x-rays of his Achilles heel and a CAT scan of his back.

j.  **Daniel Jones.** On November 10, 2022, between approximately 6:45 am and 7:00 am, Mr. Jones was locked in his cell (B-U-50), following all laws, rules, and guidelines, when he was assaulted by multiple correctional officers without provocation. After being directed to strip down to his boxers and slippers, Mr. Jones complied without any hesitation or resistance. Approximately two officers or CERT members—including Officer Kenneth Lamb, Chad Leclair, Anthony Coppola, R. Jones (John Doe #4), and Roxan Wilson—entered his cell. Mr. Jones was facing the wall with his hands interlocked over his head when the officers began to punch his head and body. Other officers pepper sprayed him when he turned around to defend himself. The officers sprayed his face and head even after he laid on the floor and explained that he had asthma and was not resisting. After handcuffing Mr. Jones, the officers continued using the pepper spray and punched, kicked, and stomped on him. The officers then held his neck down and bent his body over with his arms up as they walked him to the medical unit. When Mr. Jones asked for his asthma pump because he was struggling to breathe, the officers responded that they wanted information. The officers also asked if Mr. Jones wanted to keep his leg, penis, and buttocks, and then kicked his bad leg, touched his penis, and shoved a stick between his buttocks and boxers. They continued to punch him while he was handcuffed and blind. As a result of this assault, Mr. Jones suffered difficulty seeing, swollen lips, a cracked tooth, a black eye, a bite to his upper right chest, a scraped right shoulder.

24

k.  **Travis Matthews.** On November 10, 2022, at approximately 6:45 am, Mr. Matthews was locked in his cell (B-Z-64), following all laws, rules, and guidelines, when he was assaulted by multiple correctional officers without provocation. After being directed to place his razor and ID on the gate and to strip down to his underwear and slippers, Mr. Matthews complied without any hesitation or resistance. Approximately five officers or CERT members entered his cell, including Officers E. Wilson Sean Crowe, M. Rivera, and Michael Castellini. One officer immediately hit him in the face, and the officers tackled Mr. Matthews and began punching, kicking, and stomping on him. They then handcuffed him behind his back, continued to beat him, and slammed his head against the ground. The officers yelled at him to stop resisting, even though he was not resisting, and dragged him outside of his cell with his genitals exposed. CERT officers punched Mr. Matthews in the face as he was walked down the gallery to the medical unit. A female officer in the medical unit instructed another officer to put Mr. Matthews's penis back inside his boxers. As a result of this assault, Mr. Matthews suffered swelling and knots to the right side of his forehead, scrapes and scuffs to his right shoulder and back, a busted lip, a jammed left middle finger, pain, and complete humiliation.

l.  **David McFadden.** On November 10, 2022, at approximately 6:50 a.m., Mr. McFadden was locked in his cell (B-U-59), following all laws, rules, regulations, and guidelines, when he was assaulted by multiple correctional officers without provocation. Mr. McFadden was washing his face, facing the back of his cell, wearing shorts, long johns, and a t-shirt, when he heard other incarcerated men

state, "They are here. They are here." He then heard the sound of his cell gate opening, at which point multiple CERT members, including Sergeant Jeremy Osterhoudt, and Officers Taylor (John Doe #5) and Corey Compton, rushed into his cell, forced him toward the wall, and immediately began striking him about his head and body, as they yelled, "Stop Resisting," even though he was not resisting. At one point, one of the officers had his knee on Mr. McFadden's neck. Eventually, the officers put Mr. McFadden on his bed, face down, and handcuffed him behind his back. The officers sprayed him with mace and punched him multiple times in the face, ribs, and back after he was handcuffed. The officers then escorted him to the prison's medical unit and threatened him with further injury if he reported what happened. As a result, Mr. McFadden did not report the pain he was experiencing in his ribs, face, and back. As a result of this assault, Mr. McFadden urinated blood for several days, and both of his eyes were red and swollen. The vision in his left eye was negatively impacted, and he suffered substantial, ongoing pain in his ribs. Due to his injuries and persistent pain, Mr. McFadden was transported to Mount Vernon Hospital for treatment and evaluation.

m. **Anthony McNaughty.** On November 10, 2022, at approximately 7:50 am, Mr. McNaughty was locked in his cell (B-U-52), following all laws, rules, and guidelines, when he was assaulted by multiple correctional officers without provocation. After being directed to strip down to his boxers and slippers, place his hands above his head, and face the wall, Mr. McNaughty complied without any hesitation or resistance. Approximately four officers or CERT members, including Officers Alfred Ostrander, Michael Quackenbush, Kemar Euter, Anthony Coppola,

and Chad Leclair, entered his cell and immediately placed him in a chokehold. They pinned him face down onto his bed, put their knees on his back, and punched his head and the side of his face. One officer pulled on the fingers of his left hand. Mr. McNaughty, who felt pressure on his neck, informed the officers that he could not breathe. When the officers handcuffed him behind his back, his left fingers were dangling and without feeling. One officer pulled on these fingers as they walked Mr. McNaughty to the medical unit. As a result of this assault, Mr. McNaughty suffered a chip fracture to his left hand, a cut to his chin, and scrapes, bruising, and pain about his body. Due to his injuries and persistent pain, he was transported to Mount Vernon Hospital two days later for treatment and evaluation.

n. **Antonio Pegues.** On November 10, 2022, between approximately 5:00 pm and 6:00 pm, Mr. Pegues was locked in his cell (B-R-31), following all laws, rules, and guidelines, when he was assaulted by multiple correctional officers without provocation. After being directed to strip down to his underwear, step out of his cell with his mattress, and return to his cell facing the back wall, Mr. Pegues complied without any hesitation or resistance. Approximately three officers or CERT members, including Officer Ryan Decker, and officers wearing numbers 43-11, 43-32, and 43-34 entered his cell. Immediately, Officer 43-11 hit his back with a baton and another officer hit his right knee with a baton. Officer 43-11 then pushed Mr. Pegues's face into a wall, and another officer pulled his left hand behind his back, all while the third officer was hitting him. They handcuffed Mr. Pegues and led him down the gallery with his body bent over and arms up. As a result of

this assault, Mr. Pegues suffered pain to his ribs, lower back, right knee, and shoulders.

o. **Keith Phoenix.** On November 10, 2022, at approximately 7:30 pm, Mr. Phoenix was locked in his cell (B-V-4), following all laws, rules, and guidelines, when he was assaulted by multiple correctional officers without provocation. After being directed to strip down to his boxers, face the wall, and put his hands on the wall, Mr. Phoenix complied without any hesitation or resistance. Approximately three officers or CERT members, including Officers Robert J. Davies, III, Christon Coleman, and Michael Calleri, entered his cell. One of the officers used his stick to hit his right pinky finger, which was jammed from playing basketball, because it was not flat against the wall. After Mr. Phoenix fell to the floor in pain, his face was pinned against the toilet rim, and the officer put his knee on his neck.. As a result of this assault, Mr. Phoenix suffered substantial pain to and loss of movement of his right pinky finger.

p. **Vincent Poliandro.** On November 10, 2022, at approximately 9:00 am, Mr. Poliandro was locked in his cell (B-U-25), following all laws, rules, and guidelines, when he was assaulted by multiple correctional officers without provocation, including Officers James Smith, Arolfo Delacruz, Joshua Reynolds, and Daniel Dagele. After being directed to strip to his boxers and shower shoes and exit his cell with his mattress for screening, Mr. Poliandro complied without any hesitation or resistance. He stood outside his cell after the screening and was told to remain still. An officer handcuffed him after his eyes twice followed items being thrown out of his cell. When Mr. Poliandro attempted to inform one of the officers about a

medical device in his cell, the officer behind him lifted him off the ground by his handcuffs and simultaneously began to walk him down the gallery. Another officer told the officer to stop and instructed the others to step back. This officer then pepper-sprayed Mr. Poliandro's entire face and body, causing an intense burning feeling. The officers dragged Mr. Poliandro to the medical unit and sat him next to a sink without allowing him to rinse off. Multiple officers laughed at Mr. Poliandro and teased him for being "animated" after being pepper sprayed. As a result of this assault, Mr. Poliandro suffered total blindness for one week, partial deafness in his right ear, and a large abrasion to his left shoulder and chest area.

q. **Alan Ramirez.** On November 7, 2022, between approximately 7:00am and 9:00am, Mr. Ramirez was locked in his cell (5-B-9) following all laws, rules, and guidelines when he was assaulted by multiple correctional officers without provocation. After being directed to exit his cell, Mr. Ramirez complied without any hesitation or resistance. Approximately two to three officers or CERT members, including Officers R. Mikerson (John Doe #6), M. Miranda (John Doe #7), and U. Placido (John Doe #8), entered his cell to conduct a search. When he asked to view the search, an officer slammed his head into the wall. The officer also kicked or punched his lower back. As a result of this assault, Mr. Ramirez suffered swelling to his forehead and lower back pain, and has since experienced constant headaches.

r. **Terrell Rice.** On November 9, 2022, between approximately 7:00 am and 8:00 am, Mr. Rice was locked in his cell (A-P-16), following all laws, rules, and guidelines, when he was assaulted by multiple correctional officers without provocation. After

being directed to strip down to his boxers, face the wall, and place his hands on the wall, Mr. Rice complied without any hesitation or resistance. He then moved between the lockers and toilet in his cell as directed, without removing his hands from the wall. Approximately four to six officers or CERT members, including Officers Andrew Herman, Ryan Caswell, Kyle Charsley, Michael Sarrubo, and Daniel Halstrom, entered his cell and yelled at him to stop resisting, even though he was not resisting. One officer punched him in the back of his head, and another hit his head with a stick. Mr. Rice fell to the ground and the officers punched, kicked, and used their sticks on his head and body. The officers also attempted to bash his face into the locker. Mr. Rice yelled that he could not breathe as officers tried to shove his head inside a property bag. The officers then handcuffed him and dragged him to the medical unit. On the way there, Mr. Rice's body and knees scraped the floor, wrists were bleeding from the handcuffs, and arms felt as if they were going to break. He did not receive any care at the medical unit. As a result of this assault, Mr. Rice suffered a large bruise to his ribs, a bruise on the left side of his hip, a busted lip, a cut over his left eye, and head and back pain.

s.  **Jonathan Sanchez.** On November 9, 2022, at approximately 8:25 pm, Mr. Sanchez was locked in his cell (A-H-6) following all laws, rules, and guidelines when he was assaulted by multiple correctional officers without provocation. After being directed to face the back wall of his cell, Mr. Sanchez complied without any hesitation or resistance. Multiple correctional officers or CERT members, including Officers Michael Kasper, Lance Tabor and Gregory Scott, entered his cell and immediately began to strike him in his head and face and attempted to rip out his

dreadlocks. The officers then escorted him to the medical unit, but he did not receive any treatment until he was transported to Mount Vernon Hospital a week later. As a result of this assault, Mr. Sanchez suffered a concussion and continues to experience migraines and memory problems.

t.  **Ronal Sandoval-Campos.** On November 10, 2022, at approximately 6:30 pm, Mr. Sandoval-Campos was locked in his cell (B-Z-161), following all laws, rules, and guidelines, when he was assaulted by multiple correctional officers, including Officers James Emsworth, Michael Imbasciani, Daniel Piccirillo, and Scott Thompson, without provocation. After being directed by Officer Emsworth to remove his greens and socks and be ready with his mattress and pillow, Mr. Sandoval-Campos complied without any hesitation or resistance. Approximately three officers or CERT members entered his cell and placed one of his hands in handcuffs. The officers tried to force Mr. Sandoval-Campos to the floor and punched him repeatedly, landing blows on the right side of his face and the back of his head. One officer also put his stick into his left thigh. The officers then cuffed his second hand and kicked the inside of his right calf. The officer yelled at Mr. Sandoval-Campos not to move, even though he never resisted. After the officers removed him from his cell and asked his name, one of the officers slammed Mr. Sandoval-Campos's head into a metal fan because they could not understand his response. Mr. Sandoval-Campos was then searched at the medical unit, brought to a holding room, and returned to his cell without receiving treatment. Although he was taken to Mount Vernon Hospital two or three weeks later for x-rays, he only received Ibuprofen. As a result of this assault, Mr. Sandoval-Campos suffered

substantial pain to his right ear, jaw, head, ribs, and back, as well as large bruises to his right leg and left thigh.

u. **Maradona Smith.** On November 9, 2022, at approximately 5:00 pm, Mr. Smith was locked in his cell (A-N-70), following all laws, rules, and guidelines, when he was assaulted by multiple correctional officers without provocation. Approximately four CERT members standing outside his cell (John Doe #9, #10, #11, and #12) directed him to strip down to his slippers and boxer shorts, face the back wall of his cell, and interlock his hands behind his head. He complied with all directives, but the officers rushed into his cell, grabbed his dread locks, and struck him in the back of my left leg, causing him to fall to the floor. The officers then stomped his lower back, pulled out some of his dreadlocks, and struck him about the head and boy repeatedly, caused his head to hit the side of the toilet. The officers then handcuffed him behind his back, bent him over, and raised his arms up high, as they escorted him to the medical clinic, past females with his genitals exposed, which was humiliating. As a result of this events, Mr. Smith suffered significant pain to his right hand because of the way he was handcuffed, some of his dreadlocks were pulled out, and he suffered substantial pain to his left knee and lower back.

v. **Stacy Stricklin.** On November 10, 2022, at approximately 3:00 pm, Mr. Stricklin was locked in his cell (B-X-24), following all laws, rules, and guidelines, when he was assaulted by multiple correctional officers without provocation. After being directed to strip down to his boxers and slippers, face the back of his cell, and place his hands on the wall, Mr. Stricklin complied without any hesitation or resistance.

Approximately three officers or CERT members—including Officers Andres Morris, Gerard Matthies, and Ryan Caswell—entered his cell and handcuffed him. They immediately began to kick him, hit him with their fists and knees, and they dragged him to the ground. The officers escorted Mr. Stricklin to the medical unit, where one of them shoved a weapon into his mouth. As a result of this assault, Mr. Stricklin suffered bruised ribs and substantial pain to his back.

w. **Michael Thompson.** On November 10, 2022, at approximately 6:55 am, Mr. Thompson was locked in his cell (B-Z-66), following all laws, rules, and guidelines, when he was assaulted by multiple correctional officers without provocation. After being directed to strip down to his boxers and slippers, interlock his hands behind his head, and face the back of his cell, Mr. Thompson complied without any hesitation or resistance. Approximately four officers or CERT members, including Officers Kevin Pifko, Jeremy Rufino, Justin Brown, and Brendan Walsh, entered his cell and the first officer inside immediately punched him on the right side of his head, three times. After the officers forced him face down onto his bed, the first officer placed his knee on Mr. Thompson's lower back and hit him further. The officers yelled at him to stop resisting, although he was not resisting. After placing Mr. Thompson in two sets of handcuffs because of his size, the officers walked him down the gallery. Other officers lining the walls punched him and pushed their sticks into his chest as he was escorted past them, bent over, arms raised high behind him. As a result of this assault, Mr. Thompson suffered knots to the back and sides of his head, bleeding from his wrists, large bruises on his left thigh, and pain to his back and neck.

x. **Andre Velez.** On November 9, 2022, at approximately 1:20 pm, Mr. Velez was locked in his cell (A-K-65), following all laws, rules, and guidelines, when he was assaulted by multiple correctional officers without provocation. After being directed to strip down to his boxers and slippers, face the back of his cell, and interlock his hands behind his head, Mr. Velez complied without any hesitation or resistance. As he stood in this position for two to five minutes, he heard officers outside his cell discussing how to beat him up. Approximately four officers or CERT members from team CERT #17, including Officers Tc. Christy, Alfred Ostrander, and Naquan Murray, entered his cell and immediately hit Mr. Velez in the back of his head. After he stumbled and another officer placed him on his bed, the officers repeatedly punched his head and body. The officers yelled at him to stop resisting even though he never resisted. One officer put his knee on his back, and the others handcuffed him. They escorted Mr. Velez to the disciplinary area where he was strip-searched, and then to the medical unit. As a result of this assault, Mr. Velez suffered a knot to the back of his head, scrapes to his back and leg, and bruising to his back and legs.

y. **Marvin Winkfield.** On November 10, 2022, at approximately 6:25 am, Mr. Winkfield was locked in his cell (B-U-62), following all laws, rules, and guidelines, when he was assaulted by several officers without provocation. After being directed to strip down to his boxers, Mr. Winkfield complied without any hesitation or resistance. Approximately three officers or CERT members, including Officers Taylor Kanegraber, Robert Redner, Michael Quackenbush, and Christopher Bruder, entered his cell and began to punch, kick, and use their batons on his body.

After Mr. Winkfield curled up into a ball on the floor and placed his head under his bed for protection, one officer grabbed his hand and threatened to break it. The officers escorted him to the medical unit but would not let the unit provide full treatment. Mr. Winkfield was subsequently brought to disciplinary housing, where one of the officers slammed his head against the wall. As a result of this assault, Mr. Winkfield suffered bruises to his body and swelling of his head, and he continues to experience headache, pain, and vision problems.

### AS AND FOR A FIRST CAUSE OF ACTION: EXCESSIVE FORCE

#### *(as to Plaintiff Edward Bowden)*

(Deprivation of federal civil rights under the United States Constitution and 42 U.S.C §1983)

111.    Plaintiff Bowden repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

112.    By their conduct and actions, Defendants Michael Ryan, Ryan Caswell, and Alex Agostino, acting in concert and each aiding the other, with animus and under color of law, without lawful justification, and without the penological purpose or restoring or maintaining discipline, intentionally, maliciously, and sadistically caused injury and damage to Plaintiff in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the Eighth Amendment to the United States Constitution.

113.    As a result of the foregoing, Plaintiff was damaged and injured, as set forth above, and he suffered significant physical and mental pain and anguish.

## AS AND FOR A SECOND CAUSE OF ACTION:
## EXCESSIVE FORCE

### *(as to Plaintiff Wilber Butler)*

(Deprivation of federal civil rights under the United
States Constitution and 42 U.S.C §1983)

114.    Plaintiff Butler repeats and reiterates the allegations set forth in the foregoing
paragraphs with the same force and effect as though fully stated herein.

115.    By their conduct and actions, Defendants William Gonzalez-Santos, Kemar Euter,
Justin Christian, Jaime Uszenski, acting in concert and each aiding the other, with animus and
under color of law, without lawful justification, and without the penological purpose or restoring
or maintaining discipline, intentionally, maliciously, and sadistically caused injury and damage to
Plaintiff in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and
the Eighth Amendment to the United States Constitution.

116.    As a result of the foregoing, Plaintiff was damaged and injured, as set forth above,
and he suffered significant physical and mental pain and anguish.

## AS AND FOR A THIRD CAUSE OF ACTION:
## EXCESSIVE FORCE

### **(as to Plaintiff Silvestre Campo)**

(Deprivation of federal civil rights under the United
States Constitution and 42 U.S.C §1983)

117.    Plaintiff Campo repeats and reiterates the allegations set forth in the foregoing
paragraphs with the same force and effect as though fully stated herein.

118.    By their conduct and actions, Defendants Ameed Al-Rabadi, Martin Rivera,
Anthony Navaro, and Daniel Urciuoli, acting in concert and each aiding the other, with animus
and under color of law, without lawful justification, and without the penological purpose or

restoring or maintaining discipline, intentionally, maliciously, and sadistically caused injury and damage to Plaintiff in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the Eighth Amendment to the United States Constitution.

119.    As a result of the foregoing, Plaintiff was damaged and injured, as set forth above, and he suffered significant physical and mental pain and anguish.

### AS AND FOR A FOURTH CAUSE OF ACTION: EXCESSIVE FORCE

**(*as to Plaintiff Aubrey Carter*)**

(Deprivation of federal civil rights under the United States Constitution and 42 U.S.C §1983)

120.    Plaintiff Carter repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

121.    By their conduct and actions Officer David Vance and Kemar Euter, A. Arroyo (John Doe #1), and Anthony Coppola, acting in concert and each aiding the other, with animus and under color of law, without lawful justification, and without the penological purpose or restoring or maintaining discipline, intentionally, maliciously, and sadistically caused injury and damage to Plaintiff in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the Eighth Amendment to the United States Constitution.

122.    As a result of the foregoing, Plaintiff was damaged and injured, as set forth above, and he suffered significant physical and mental pain and anguish.

## AS AND FOR A FIFTH CAUSE OF ACTION:
## EXCESSIVE FORCE

**(*as to Plaintiff Sean Davis*)**

(Deprivation of federal civil rights under the United
States Constitution and 42 U.S.C §1983)

123.    Plaintiff Davis repeats and reiterates the allegations set forth in the foregoing

paragraphs with the same force and effect as though fully stated herein.

124.    By their conduct and actions, Defendants Carmen Matrese, W. Shelling (John Doe

#2), Alex Agostino, Robert J. Davies, III, and Morgan James Dimonda, acting in concert and each

aiding the other, with animus and under color of law, without lawful justification, and without the

penological purpose or restoring or maintaining discipline, intentionally, maliciously, and

sadistically caused injury and damage to Plaintiff in violation of Plaintiff's constitutional rights as

guaranteed under 42 U.S.C. §1983 and the Eighth Amendment to the United States Constitution.

125.    As a result of the foregoing, Plaintiff was damaged and injured, as set forth above,

and he suffered significant physical and mental pain and anguish.

## AS AND FOR A SIXTH CAUSE OF ACTION:
## EXCESSIVE FORCE

**(*as to Plaintiff Robert Gregory*)**

(Deprivation of federal civil rights under the United
States Constitution and 42 U.S.C §1983)

126.    Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs

with the same force and effect as though fully stated herein.

127.    By their conduct and actions, Defendants Jared. Montgomery, T. O'hea (John Doe

#3), Charles Devaney, Ryan Caswell, Gerard Matthies, and Andres Morris, acting in concert and

each aiding the other, with animus and under color of law, without lawful justification, and without

the penological purpose or restoring or maintaining discipline, intentionally, maliciously, and sadistically caused injury and damage to Plaintiff in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the Eighth Amendment to the United States Constitution.

128.    As a result of the foregoing, Plaintiff was damaged and injured, as set forth above, and he suffered significant physical and mental pain and anguish.

## AS AND FOR A SEVENTH CAUSE OF ACTION: EXCESSIVE FORCE

### (*as to Plaintiff Anthony Grigoroff*)

(Deprivation of federal civil rights under the United States Constitution and 42 U.S.C §1983)

129.    Plaintiff Grigoroff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

130.    By their conduct and actions, Defendant Miguel Nin, acting in concert with other correctional officers, who were each aiding the other, with animus and under color of law, without lawful justification, and without the penological purpose or restoring or maintaining discipline, intentionally, maliciously, and sadistically caused injury and damage to Plaintiff in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the Eighth Amendment to the United States Constitution.

131.    As a result of the foregoing, Plaintiff was damaged and injured, as set forth above, and he suffered significant physical and mental pain and anguish.

## AS AND FOR A EIGHTH CAUSE OF ACTION:
## EXCESSIVE FORCE

### (*as to Plaintiff Shardell Hall*)

(Deprivation of federal civil rights under the United
States Constitution and 42 U.S.C §1983)

132.    Plaintiff Hall repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

133.    By their conduct and actions, Defendants Stephen Lacika, Mario Ramirez, and Naquan Murray, with animus and under color of law, without lawful justification, and without the penological purpose or restoring or maintaining discipline, intentionally, maliciously, and sadistically caused injury and damage to Plaintiff in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the Eighth Amendment to the United States Constitution.

134.    As a result of the foregoing, Plaintiff was damaged and injured, as set forth above, and he suffered significant physical and mental pain and anguish.

## AS AND FOR A NINTH CAUSE OF ACTION:
## EXCESSIVE FORCE

### (*as to Plaintiff Brian Johnson*)

(Deprivation of federal civil rights under the United
States Constitution and 42 U.S.C §1983)

135.    Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

136.    By their conduct and actions, Defendants Angela Primo, Andrew Arvidson, Rondy London, and Richard Britton, acting in concert and each aiding the other, with animus and under color of law, without lawful justification, and without the penological purpose or restoring or maintaining discipline, intentionally, maliciously, and sadistically caused injury and damage to

Plaintiff in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the Eighth Amendment to the United States Constitution.

137.    As a result of the foregoing, Plaintiff was damaged and injured, as set forth above, and he suffered significant physical and mental pain and anguish.

## AS AND FOR AN TENTH CAUSE OF ACTION: EXCESSIVE FORCE

### (*as to Plaintiff Daniel Jones*)

(Deprivation of federal civil rights under the United States Constitution and 42 U.S.C §1983)

138.    Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

139.    By their conduct and actions, Defendants Chad Leclair, Anthony Coppola, R. Jones (John Doe #4), Kenneth Lamb, and Roxan Wilson, acting in concert and each aiding the other, with animus and under color of law, without lawful justification, and without the penological purpose or restoring or maintaining discipline, intentionally, maliciously, and sadistically caused injury and damage to Plaintiff in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the Eighth Amendment to the United States Constitution.

140.    As a result of the foregoing, Plaintiff was damaged and injured, as set forth above, and he suffered significant physical and mental pain and anguish.

## AS AND FOR ELEVENTH CAUSE OF ACTION:
## EXCESSIVE FORCE

### (*as to Plaintiff Travis Matthews*)

(Deprivation of federal civil rights under the United
States Constitution and 42 U.S.C §1983)

141.     Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

142.     By their conduct and actions, Defendants Eric Wilson, Sean Crowe, Martin Rivera, and Michael Castellani, acting in concert and each aiding the other, with animus and under color of law, without lawful justification, and without the penological purpose or restoring or maintaining discipline, intentionally, maliciously, and sadistically caused injury and damage to Plaintiff in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the Eighth Amendment to the United States Constitution.

143.     As a result of the foregoing, Plaintiff was damaged and injured, as set forth above, and he suffered significant physical and mental pain and anguish.

## AS AND FOR A TWELFTH CAUSE OF ACTION:
## EXCESSIVE FORCE

### (*as to Plaintiff David McFadden*)

(Deprivation of federal civil rights under the United
States Constitution and 42 U.S.C §1983)

144.     Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

145.     By their conduct and actions, Defendants Jeremy Osterhoudt, Taylor (John Doe #5), and Corey Compton, acting in concert and each aiding the other, with animus and under color of law, without lawful justification, and without the penological purpose or restoring or

maintaining discipline, intentionally, maliciously, and sadistically caused injury and damage to Plaintiff in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the Eighth Amendment to the United States Constitution.

146.     As a result of the foregoing, Plaintiff was damaged and injured, as set forth above, and he suffered significant physical and mental pain and anguish.

<strong><u>AS AND FOR A THIRTEENTH CAUSE OF ACTION:<br>EXCESSIVE FORCE</u></strong>

<strong><em>(as to Plaintiff Anthony McNaughty)</em></strong>

(Deprivation of federal civil rights under the United<br>States Constitution and 42 U.S.C §1983)

147.     Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

148.     By their conduct and actions, Defendants Alfred Ostrander, Michael Quackenbush, Anthony Coppola, and Cha Leclair, acting in concert and each aiding the other, with animus and under color of law, without lawful justification, and without the penological purpose or restoring or maintaining discipline, intentionally, maliciously, and sadistically caused injury and damage to Plaintiff in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the Eighth Amendment to the United States Constitution.

149.     As a result of the foregoing, Plaintiff was damaged and injured, as set forth above, and he suffered significant physical and mental pain and anguish.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION:
## EXCESSIVE FORCE

### (as to Plaintiff Antonio Peques)

(Deprivation of federal civil rights under the United
States Constitution and 42 U.S.C §1983)

150.    Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs

with the same force and effect as though fully stated herein.

151.    By their conduct and actions, Defendant Ryan Decker, acting in concert with other

correctional officers, who were each aiding the other, with animus and under color of law, without

lawful justification, and without the penological purpose or restoring or maintaining discipline,

intentionally, maliciously, and sadistically caused injury and damage to Plaintiff in violation of

Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the Eighth Amendment

to the United States Constitution.

152.    As a result of the foregoing, Plaintiff was damaged and injured, as set forth above,

and he suffered significant physical and mental pain and anguish.

## AS AND FOR A FIFTTEENTH CAUSE OF ACTION:
## EXCESSIVE FORCE

### (as to Plaintiff Keith Phoenix)

(Deprivation of federal civil rights under the United
States Constitution and 42 U.S.C §1983)

153.    Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs

with the same force and effect as though fully stated herein.

154.    By their conduct and actions, Defendants Robert J. Davies, III Christon Coleman,

and Michael Calleri, acting in concert and each aiding the other, with animus and under color of

law, without lawful justification, and without the penological purpose or restoring or maintaining

discipline, intentionally, maliciously, and sadistically caused injury and damage to Plaintiff in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the Eighth Amendment to the United States Constitution.

155.    As a result of the foregoing, Plaintiff was damaged and injured, as set forth above, and he suffered significant physical and mental pain and anguish.

## AS AND FOR A SIXTEENTH CAUSE OF ACTION: EXCESSIVE FORCE

**(*as to Plaintiff Vincent Poliandro*)**

(Deprivation of federal civil rights under the United States Constitution and 42 U.S.C §1983)

156.    Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

157.    By their conduct and actions in deploying OC pray all over Plaintiff's face and body, Defendants James Smith, Arolfo Delacruz, Joshua Reynolds, and Daniel Dagele, acting in concert and each aiding the other, with animus and under color of law, without lawful justification, and without the penological purpose or restoring or maintaining discipline, intentionally, maliciously, and sadistically caused injury and damage to Plaintiff in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the Eighth Amendment to the United States Constitution.

158.    As a result of the foregoing, Plaintiff was damaged and injured, as set forth above, and he suffered significant physical and mental pain and anguish.

## AS AND FOR A SEVENTEENTH CAUSE OF ACTION:
## EXCESSIVE FORCE

### (*as to Plaintiff Ramirez*)

(Deprivation of federal civil rights under the United
States Constitution and 42 U.S.C §1983)

159.     Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

160.     By their conduct and actions, Defendants John Does #6, #7, and #8, acting in concert and each aiding the other, with animus and under color of law, without lawful justification, and without the penological purpose or restoring or maintaining discipline, intentionally, maliciously, and sadistically caused injury and damage to Plaintiff in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the Eighth Amendment to the United States Constitution.

161.     As a result of the foregoing, Plaintiff was damaged and injured, as set forth above, and he suffered significant physical and mental pain and anguish.

## AS AND FOR A EIGHTEENTH CAUSE OF ACTION:
## EXCESSIVE FORCE

### (*as to Plaintiff Terrell Rice*)

(Deprivation of federal civil rights under the United
States Constitution and 42 U.S.C §1983)

162.     Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

163.     By their conduct and actions, Defendants Andrew Herman, Ryan Caswell, Kyle Charsley, Michael Sarrubbo, and Daniel Halstrom, acting in concert and each aiding the other, with animus and under color of law, without lawful justification, and without the penological

purpose or restoring or maintaining discipline, intentionally, maliciously, and sadistically caused injury and damage to Plaintiff in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the Eighth Amendment to the United States Constitution.

164.    As a result of the foregoing, Plaintiff was damaged and injured, as set forth above, and he suffered significant physical and mental pain and anguish.

## AS AND FOR AN NINETEENTH CAUSE OF ACTION: EXCESSIVE FORCE

**(*as to Plaintiff Jonathan Sanchez*)**

(Deprivation of federal civil rights under the United States Constitution and 42 U.S.C §1983)

165.    Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

166.    By their conduct and actions, Defendants Michael Kasper, Lance Tabor and Gregory Scott, acting in concert and each aiding the other, with animus and under color of law, without lawful justification, and without the penological purpose or restoring or maintaining discipline, intentionally, maliciously, and sadistically caused injury and damage to Plaintiff in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the Eighth Amendment to the United States Constitution.

167.    As a result of the foregoing, Plaintiff was damaged and injured, as set forth above, and he suffered significant physical and mental pain and anguish.

## AS AND FOR A TWENTIETH CAUSE OF ACTION:
## EXCESSIVE FORCE

### (*as to Plaintiff Ronal Sandoval Campos*)

(Deprivation of federal civil rights under the United
States Constitution and 42 U.S.C §1983)

168.    Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

169.    By their conduct and actions, Defendants James Emsworth, Michael Imbasciani, Daniel Piccirillo, and Scott Thompson, acting in concert and each aiding the other, with animus and under color of law, without lawful justification, and without the penological purpose or restoring or maintaining discipline, intentionally, maliciously, and sadistically caused injury and damage to Plaintiff in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the Eighth Amendment to the United States Constitution.

170.    As a result of the foregoing, Plaintiff was damaged and injured, as set forth above, and he suffered significant physical and mental pain and anguish.

## AS AND FOR A TWENTY-FIRST CAUSE OF ACTION:
## EXCESSIVE FORCE

### (*as to Plaintiff Maradona Smith*)

(Deprivation of federal civil rights under the United
States Constitution and 42 U.S.C §1983)

171.    Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

172.    By their conduct and actions, Defendants John Does #9, #10, #11, and #12, acting in concert and each aiding the other, with animus and under color of law, without lawful justification, and without the penological purpose or restoring or maintaining discipline,

intentionally, maliciously, and sadistically caused injury and damage to Plaintiff in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the Eighth Amendment to the United States Constitution.

173.    As a result of the foregoing, Plaintiff was damaged and injured, as set forth above, and he suffered significant physical and mental pain and anguish.

## AS AND FOR A TWENTY-SECOND CAUSE OF ACTION:
### EXCESSIVE FORCE

**(as *to Plaintiff Stacey Stricklin*)**

(Deprivation of federal civil rights under the United
States Constitution and 42 U.S.C §1983)

174.    Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

175.    By their conduct and actions, Defendants Andres Morris, Gerard Matthies, and Ryan Caswell, acting in concert and each aiding the other, with animus and under color of law, without lawful justification, and without the penological purpose or restoring or maintaining discipline, intentionally, maliciously, and sadistically caused injury and damage to Plaintiff in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the Eighth Amendment to the United States Constitution.

176.    As a result of the foregoing, Plaintiff was damaged and injured, as set forth above, and he suffered significant physical and mental pain and anguish.

## AS AND FOR A TWENTY-THIRD CAUSE OF ACTION: EXCESSIVE FORCE

**(*as to Plaintiff Michael Thompson*)**

(Deprivation of federal civil rights under the United
States Constitution and 42 U.S.C §1983)

177.    Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

178.    By their conduct and actions in punching Mr. Taylor in the head, striking him about his body while face down with a knee in his back, and then parading him through the gallery, as other officers punched him and poked him with their sticks as he was escorted out of his cell, Defendants Kevin Pifko, Jeremy Rufino, Justin Brown, and Brendan Walsh, acting in concert and each aiding the other, with animus and under color of law, without lawful justification, and without the penological purpose or restoring or maintaining discipline, intentionally, maliciously, and sadistically caused injury and damage to Plaintiff in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the Eighth Amendment to the United States Constitution.

179.    As a result of the foregoing, Plaintiff was damaged and injured, in that he suffered knots to the back and sides of his head, bleeding from his wrists, large bruises on his left thigh, pain to his back and neck, and significant physical and mental pain and anguish.

## AS AND FOR A TWENTY-FOURTH CAUSE OF ACTION: EXCESSIVE FORCE

### (*as to Plaintiff Andre Velez*)

(Deprivation of federal civil rights under the United
States Constitution and 42 U.S.C §1983)

180.    Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

181.    By their conduct and actions, Defendants Tc. Christy, Alfred Ostrander, and Naquan Murray, acting in concert and each aiding the other, with animus and under color of law, without lawful justification, and without the penological purpose or restoring or maintaining discipline, intentionally, maliciously, and sadistically caused injury and damage to Plaintiff in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the Eighth Amendment to the United States Constitution.

182.    As a result of the foregoing, Plaintiff was damaged and injured, in that he sustained bruising about his body and swelling to his head, he has experienced headaches and vision problems, and he suffered significant physical and mental pain and anguish.

## AS AND FOR A TWENTY-FIFTH CAUSE OF ACTION: EXCESSIVE FORCE

### (*as to Plaintiff Winkfield*)

(Deprivation of federal civil rights under the United
States Constitution and 42 U.S.C §1983)

183.    Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

184.    By their actions in punching, kicking, and striking Plaintiff with their batons about his head and body, and slamming his head against a wall, Defendants Taylor Kanegraber, Robert

Redner, Michael Quackenbush, and Christopher Bruder, acting in concert and each aiding the other, with animus and under color of law, without lawful justification, and without the penological purpose or restoring or maintaining discipline, intentionally, maliciously, and sadistically caused injury and damage to Plaintiff in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the Eighth Amendment to the United States Constitution.

185.    As a result of the foregoing, Plaintiff was damaged and injured, in that he sustained bruising about his body and swelling to his head, he has experienced headaches and vision problems, and he suffered significant physical and mental pain and anguish.

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against all of the defendants:

    a.  Compensatory damages;

    b.  Punitive damages;

    c.  The convening and empaneling of a jury to consider the merits of the claims herein; 42 USC 1988(b);

    d.  Costs and interest and attorneys' fees;

    e.  For a trial by jury; and

    f.  Such other and further relief as this court may deem appropriate..

Dated: Garden City, New York
       November 6, 2025

                       Respectfully submitted,
                       Barket Epstein Kearon Aldea & LoTurco, LLP

            By: _____

                       Danielle Muscatello
                       Alexander Klein
                       666 Old Country Road, Suite 700
                       Garden City, New York 11530
                       (516) 745-1500
                       dmuscatello@barketepstein.com
                       aklein@barketepstein.com